R. GARVIN v. J. GARVIN.

1. Under action to enjoin a judgment and execution and for account, a decree was rendered sustaining the judgment and giving leave to defendant to issue his execution for balance due in the former case and for the costs of this. Execution was accordingly issued, entitled of the later case, and the judgment debtor's lands were sold thereunder. *Held,* that this execution was duly authorized and rightly entitled, but if entitled wrong, that it was a mere irregularity, which did not render the execution void.
2. Where a decree found a balance due on a former judgment and directed execution for its enforcement, this second judgment absorbed

and superseded the first, and the clerk of court properly entered up judgment in such second cause for the amount so found due.

Before Pressley, J., Aiken, February, 1883.

The opinion makes a full statement of the case.

*Mr. P. A. Emanuel,* for appellant.

*Messrs. Henderson Bros.* and *Croft & Dunlap,* contra.

April 3, 1884.   The opinion of the court was delivered by

Mr. Justice McGowan.   This was a motion to set aside an execution and sales of land made under it.   The contest is between brothers, has now been waged for nearly ten years, having been in this court twice before, and has become so complicated that it cannot be understood without a short summary of the facts.

In 1858, one John Fox loaned Robert Garvin $2,600, and took a note signed by Robert Garvin, John Garvin, William Meritt, and J. J. Howard.   After the war (1868), the amount was reduced to $1,800, and a new note given by Robert Garvin, John Garvin, James Garvin, J. L. Garvin, and J. A. Garvin, all of whom confessed judgment on the note, which was entered in Lexington county, April 3, 1868.   Payments were made on the judgment from time to time, some by Robert and some by John, which reduced the amount due to $359, on August 5, 1872.   For this balance the judgment was assigned to Livingston, who transferred it to John Garvin, and he removed the judgment to Aiken county, and claiming that he was only surety and as such had paid for his principal the amount of $1,836.40, he claimed that the execution to that extent belonged to him under the act of 1849, and levied the property of Robert thereunder.

At this stage, Robert instituted proceedings against John, for the double purpose of enjoining the judgment on the ground that John was one of the principals and that the judgment was paid in full; and also for "an account," claiming that John was indebted to him in a large amount, $3,635.73, "for timber, lumber, cash loaned," &c.   John answered that he was only surety

on the Fox note and judgment, and that he was entitled to the whole of the execution paid by him, $1,836.40, and that he owed Robert nothing on the large account claimed against him. He prayed that the complaint should be dismissed, but did not in terms pray for affirmative relief. The issues of law and fact were referred to J. M. Williams, Esq., as referee, who found the principal facts for John—that he was only surety on the Fox note, that he owed Robert nothing, and "that defendant (John) should have leave to enforce said judgment to the amount mentioned in his said execution, with interest from its date," &c. Exceptions were filed by Lee & Clyde, at that time attorneys for Robert. The case was heard by Judge Reed, who filed his decree September 14, 1877, as follows: "On reading and filing the report of J. M. Williams, Esq., special referee herein, and on hearing argument on the exceptions by S. J. Lee, Esq., for defendant, and Messrs. Croft & Henderson for plaintiff, it is ordered that the exceptions be overruled and the report of the referee herein be confirmed, and the plaintiff have leave to enter judgment in accordance therewith, and the same become the judgment of this court."

There was no appeal from this decree, but with the written consent of Lee & Clyde, attorneys for Robert, it was enrolled in form as a money decree of John against Robert, instead of simply dismissing the complaint, and leaving the old Fox judgment standing for the benefit of John to the extent of his payments as surety, but for the precise amount of those payments and costs. This judgment, after reciting the statements of the report and the order of Judge Reed, provides as follows: "It is adjudged that the appeal from the report of the referee be dismissed; that the defendant have leave to issue execution against the plaintiff for the sum of eighteen hundred and thirty-six 65-100 dollars, with interest thereon from the 9th day of May, 1876, on the judgment of J. H. Livingston, assignee of *John Fox* v. *Robert Garvin*, which said judgment has been assigned to the defendant, and that the defendant do recover of the plaintiff the further sum of four hundred and seventy-two 40-100 dollars, the costs, and that he have leave to issue execution for the same." This judgment was signed by the clerk of the court, under the seal of the

court, with this statement appended: "I agree to the within tax-
ation of costs, and consent for within judgment to be this day
entered up, and acknowledge service of copy on me. September
17, 1877. (Signed) Lee & Clyde, per Samuel J. Lee, plaintiff's
attorneys."

On December 10, 1877, an execution entitled *Robert Garvin*
v. *John Garvin* was issued upon and in conformity to the terms
of the judgment for $1,836.65, besides interest and $472.20 costs
and disbursements. This execution was levied on eight tracts of
land of the defendant, Robert, and his interest in two other
tracts, which were all sold by the sheriff of Aiken county on
January 7, 1878, and purchased by John Garvin, to whom the
sheriff executed titles.

Robert at first refused to surrender possession of the premises,
but finally, as he alleges under duress, signed a lease attorning
to John; but, in the meantime, having procured the assistance of
other counsel, at the June term of the court for 1879, he made a
motion before Judge Hudson to set aside the judgment under
which the lands had been sold, which the judge refused, on the
ground that the motion had not been made within one year as
required by the code. The Supreme Court, holding that the
motion might be made in two years under the act of 1869, then
of force, to vacate erroneous judgments, reversed the order dis-
claiming jurisdiction. See 13 *S. C.*, 160.

The matter went back, and in 1880 came up before Judge
Pressley, who heard the motion on its merits, and refused to
vacate the judgment as erroneous. From this refusal, an appeal
was again taken to this court, which affirmed the judgment below,
but in doing so said: "The alleged irregularities in the execution
issued on the Fox judgment transfered to Aiken were not directly
in the case. That execution, as we understand it, had been
superseded by the decree of Judge Reed, and was not before the
court as a subsisting execution. If any irregularities exist in
the last execution to carry out that decree, the Circuit judge
made no ruling thereon, and the question is not before us."
14 *S. C.*, 630.

Upon this, Robert Garvin renewed the struggle on the Cir-
cuit, alleging that the matter of irregularity *of the execution at*

*least* had not been adjudicated. This motion to set aside the execution came also before Judge Pressley, and he refused it, saying: "The former motion before me was to set aside *the judgment,* and no motion to set aside *the execution* was therein involved, except in so far as that would follow from setting aside the judgment. But if I am mistaken in that matter, and really failed to decide a point then before me, I now decide that *the execution* under which the sale was made in said case was clearly authorized by the decree of Judge Reed confirming the report of the referee, which expressly gave John Garvin leave to enforce said judgment, and that amounts to leave to issue execution for that purpose," &c.

From this order refusing to set aside *the execution,* Robert Garvin now appeals to this court, upon the following exceptions:

1. "That his honor erred in deciding that no motion to set aside the execution was involved in the former motion, except that which would follow from setting aside the judgment.

2. "That his honor erred in deciding that it was the duty of Robert Garvin to include the motion which he now makes to set aside the execution in his former motion, and that failing to do so, it is waived.

3. "That his honor erred in not deciding that, though irregularity was not mentioned in the notice of motion formerly before him as a ground for setting *aside the execution,* yet the evidence was before him, showing the irregularity as clearly as it is now made to appear; that his failure to decide this motion left it *in statu quo,* after the end of the term, as though no motion had been heard, and the act of the judge should not prejudice the rights of plaintiff; his motion was before the court then, and remained there until this decision, and it cannot be said that he has waived his rights, he having appealed to the Supreme Court upon the ground that the Circuit Court erred in not setting aside the execution, and that court refusing to pass upon the question because of failure of decision of the Circuit Court.

4. "That his honor erred in deciding that the execution under which the sale was made in said case was clearly authorized by the decree of Judge Reed; but he should have set it aside upon the following grounds:

5. "That the execution under which the plaintiff's land was sold was irregular, null, and void, because there were two executions issued under the seal of the Court of Common Pleas in the office of the sheriff upon the same judgment, upon which no return has been made, and that prevented another execution under the judgment of Robert Garvin by John Garvin being issued.

6. "That the execution issued from Lexington, dated April 6th, 1868, could not support the sale because it had been returned and was dead.

7. "That the execution dated August 5th, 1875, was irregular and void, because the execution issued on April 6th, 1868, had run four years, to April 4th, 1872; that it had to be returned at the May term of court for Lexington, A. D. 1872; that from the said May term, 1872, to August 5th, 1875, was more than three years, requiring a motion for leave to issue execution, and none such being made, said execution was irregular and void, and could not support the sale.

8. "That the execution did not conform to the judgment in *Robert Garvin* v. *John Garvin*, and was irregular and void, because it enabled the said John Garvin to enforce his judgment for costs obtained in that case in violation of the homestead laws.

9. "That leave was given to enforce the judgment upon which execution had been stayed; that no order which was passed could operate to destroy the lien of the execution of August 5th, 1875, and that the judgment in *Robert Garvin* v. *John Garvin* restored the execution to its former condition and status, requiring its return before another execution could issue for the amount of said judgment.

10. "That the levy under the said execution of date August 5th, 1875, made in October, 1877, and which is evidenced by the sheriff's advertisement, the order of injunction issued by Judge Wiggin in November, 1877, concludes the defendant that said execution was of vitality and force, requiring its return before another could issue."

This contest has been urged by Robert Garvin with such persistence, and with so many earnest and reiterated declarations of "wrong, injury, and injustice," that we have taken the trouble

to look back through the whole record, with more care than the question at issue actually required. Robert Garvin seems never to have realized the fact that, as soon as the report of referee Williams on the merits had been confirmed by the Circuit Court without appeal, the case was *res adjudicata*, and beyond the power of reconsideration by any court, except possibly upon a strong case of subsequently discovered evidence or fraud, which he failed to make. It may be that his lands sold for less than their value, at a forced sale for cash by the sheriff, to which possibly he contributed himself by forbidding the sale as illegal and unauthorized; but, however much that may afford grounds for regret, it cannot be considered as a good ground for relief by the court.

As the assault upon *the judgment* was under the act of 1869, now repealed, which did not in express terms include *executions*, and the separate motion to set aside the latter, if made, was not pressed to a decision before Judge Pressley when *the judgment* was considered, we will now consider the question of *irregularities in the execution.* "Independent of statutory provisions, the Court of Common Pleas, by virtue of its own inherent right, from the general nature and intent of its jurisdiction, has always exercised the power of looking into its own records, and on motion affording that remedy after judgment has been entered up, which is obtained by writ of error in the English courts. *Mooney* v. *Welsh*, 1 *Mill Con. R.*, 133; *Bank of Pennsylvania* v. *Condy*, 1 *Hill*, 210. The purpose is amendment, not destruction, and the end desired and sought must be in a mode through which it can likely be attained." *Charles* v. *Jacobs*, 5 *S. C.*, 350.

Was the execution under which the sales were made so irregular and illegal as to avoid the sales? It seems to us that, when properly understood, the objections are purely technical, and amount to this, that *the execution was called by the wrong name.* The judgment entered in the case of *Robert Garvin* v. *John Garvin*, authorized the defendant (John) "to issue execution against the plaintiff (Robert) for the sum of $1,836.65, with interest thereon from May 9th, 1876, on the judgment of *Fox* v. *Robert Garvin*, assigned to the defendant, and that defendant do recover of plaintiff the further sum of $472.40, costs," &c.

Was this not judgment on a money decree for $1,836.65, and the further sum of $472.40? The execution issued for the precise sum authorized, but entitled of the case out of which it arose, *Robert Garvin* v. *John Garvin*, and not of the old ·Fox judgment for the use of John. We incline to think the execution was properly entitled of the case in which the judgment was rendered.

But suppose it had been styled (as contended it should have been) "John Fox for the use of John Garvin," how could that have benefited Robert Garvin? He makes the effort to show, *first*, that it should have been so issued; and, *second*, that if so, it would have been irregular and void, for the reason that the age and status of that old execution rendered it impossible to be renewed or revived. But it will be perceived that. this view entirely overlooks the fundamental fact that the judgment giving leave to issue the execution cut up at once all such defences as to the old execution. The execution was certainly to issue, whether it went in the old name or put into a new form, to enforce judgment for the money paid by John, being, however, for the identical amount due on the old execution by Robert. We think the execution was authorized by the enrolled judgment, and that it properly retained the title of the judgment upon which it was based. But even if there was a misnomer as to the title, that could not be more than an irregularity, which did not render the execution absolutely void. *Ingram* v. *Belk*, 2 *Strob.*, 208; *Lawrence* v. *Grambling*, 13 *S. C.*, 120; *Tobin* v. *Myers*, 18 *Id.*, 324.

But it is further ingeniously argued that if the enrolled judgment authorized the execution, the decree of Judge Reed did not authorize the judgment, which was enrolled, and a motion to correct the "abstract. judgment book" No. 381 is made a part of the relief asked for. Section 286 of the code, in reference to a trial by jury, provides that "if a different direction be not given by the court, the clerk must enter judgment in conformity with the verdict;" and section 289, in reference to a case heard by the court, provides that after the decision has been filed, &c., "judgment upon the decision shall be entered accordingly." Was this judgment entered according to the decision? There is some lack of clearness in the language used, but we think the decision, taken as a whole, substantially authorized the judgment.

There is no force in the fact that Judge Reed transposed the terms "plaintiff" and "defendant." John Garvin claimed to be "plaintiff" in the Fox judgment, but he was "defendant" in the case then being heard, brought by Robert Garvin; and hence the clerical error. A surety who has paid a judgment against his principal and himself may claim the original judgment as his own, under the act upon the subject *supra;* but he is not bound to do so. He may claim a *new judgment* for the money paid, and that is the simplest course when there is no conflicting lien. Judge Reed in substance gave John Garvin a judgment for the money he paid as surety. The words of the decree are that "the plaintiff (manifestly defendant) have leave to enter judgment." He confirmed the referee's report, which, as Judge Pressley said, "expressly gave John Garvin leave to enforce said judgment, and that amounts to leave to issue execution for that purpose."

If the intention had been simply to remit John, already in court, back to his right of subrogation in the Fox execution, then (as insisted) incapable of renewal, there would have been no propriety or sense in giving him instant "leave to enforce said judgment to the amount mentioned in his said execution, with interest from its date." That, on the contrary, unmistakably indicates present judgment, which superseded and absorbed as legal process the old Fox judgment and all the executions issued at different times upon it, which, although *functi officio,* were kept on file probably as the evidence on which the final judgment was rendered. Besides, the three attorneys of Robert Garvin expressly assented to the judgment in the form in which it was enrolled.

The judgment of this court is that the judgment of the Circuit Court be affirmed.